UNITED STATES of America, Plaintiff,

v.

**David Leroy SPROED, Defendant.**

**CVB No. P127482.**

United States District Court,
D. Oregon.

Jan. 6, 1986.

---

OPINION AND ORDER

JAMES M. BURNS, District Judge.

Judges seldom get a chance to wax lyrical. Rarer still does a judge have an opportunity to see a case centered around a butterfly.[1] Those who read this opinion will, therefore, recognize that this case presented me with a temptation which I obviously could not resist.

---

1. Butterflies are normally grist for the poet's mill, not that of the judge. Occasionally, even the august Court of Appeals finds itself cerebrating over butterfly related causes, *Friends of the Endangered Species v. Jantzen*, 760 F.2d 976 (9th Cir.1985).

This case charges defendant Sproed with catching butterflies in a National Park.

Sproed and his son were at Rim Village of Crater Lake National Park on the afternoon of August 23, 1985 apparently doing just that—namely, catching butterflies! Along came a Park Ranger who had apparently taken keenly to heart the "Law and Order" rhetoric which some say has been a hallmark of the current administration. Responding to this Petty Offense[2] the Ranger issued to Sproed what became enshrined in judicial records as Citation P127482.

It would not be surprising to find that most of our citizens would be embittered if accused of such a heinous crime. Sproed is no exception. For reasons which appear below, I do not have to decide whether Sproed was, in fact, guilty of a crime. If his letter is to be believed, he and his young son may well have been moved by somewhat the same poetic spirit as the "aged, aged man" invented and immortalized by Lewis Carroll:

I saw an aged, aged man,
A-sitting on a gate.
'Who are you, aged man?' I said,
'And how is it you live?'
And his answer tickled through my head
Like water through a sieve.
He said, 'I look for butterflies
That sleep among the wheat:
I make them into mutton-pies,
And sell them in the street.'

"Through the Looking Glass", Ch. 8.

Or Mr. Sproed may have believed, along with the German poet Heine that:

With the rose the butterfly's deep in love,
A thousand times hovering round;
But round himself, all tender like gold,
The sun's sweet ray is hovering found.

Mr. Sproed may even have been mulling over the lines written by Oregon's own "poet", Joaquin Miller:

The gold-barr'd butterflies to and fro
And over the waterside wander'd and wove
As heedless and idle as clouds that rove
And drift by the peaks of perpetual snow.

In any event, alas, no trial will ever occur to sort these things out. The reader should be made aware of why the judicial machinery never geared up for a full trial of this case. When Sproed's letter[3] arrived at the Clerk's office, it was referred to Magistrate Hogan, along with a touching note suggesting this might be a case in which Judge Hogan would want to exercise his judicial discretion. Shortly thereafter, Assistant U.S. Attorney Kent filed a motion to dismiss pursuant to Rule 48(a) of the Federal Rules of Criminal Procedure. Judge Hogan dismissed the case. Fortunately (or otherwise), I became aware, shortly afterward, of this case of lepidopteral *lese majeste*. I chose to exercise my

2. Petty offenses, a species of criminal offense established by the Congress (18 U.S.C. § 1) used to carry a maximum penalty of six months in jail or a $500 fine or both. (Actually, the maximum fine for the offense charged here would have been $5,000; last year in the Comprehensive Crime Control Act of 1984, Congress "upped the ante" for petty offense fines to $5,000.) Under applicable statutes, regulations are promulgated by the various federal agencies—Department of Interior and so forth; violation of such regulations—after they are published in the Code of Federal Regulations is a petty offense. When a Park Ranger—or other agency enforcement officer comes across a violation, a citation is issued. The citation normally provides a specified sum as collateral, i.e. bail. If the accused does not wish to contest the matter, he or she sends in the bail amount and the matter is closed. The accused may demand a trial, usually before a U.S. Magistrate; the accused, however, as a matter of right, can have the case heard by a District Judge. Occasionally a sort of third option is chosen by the accused, as happened here. He will send in a letter of explanation with a request, usually explicit, that the matter be dismissed, or otherwise be disposed of.

3. I have reproduced, in typewritten form, Mr. Sproed's handwritten letter received by the Clerk's office on September 9, 1985, and it is attached as Appendix A to this opinion.

1236

supervisory power as a District Judge to review the ruling of the Magistrate, 28 U.S.C. § 636.[4]

In his letter to the Court, Sproed says that he and his son "have always loved and enjoyed the out-of-doors and never knowingly disregard laws.... [W]e were out catching butterflies. We have a collection and wherever we go we try to add to it. It never entered my mind that it was unlawful to catch a butterfly in the park."

Sproed said he and his son "saw no signs and there was nothing even hinting [that butterfly-catching was a crime] in the paper given to us when we entered the park." Thus, he felt "that a friendly explanation and a warning was all that was necessary—it would have made this a learning experience instead of a bitter rememberance." He said that "It will take some time for me to restore my boy's previous respect for park rangers. I trust that your decision will make that job easier for me."

The Sproed's experience exemplifies the axiom "Nature Imitates Art," as one can see from Appendix B. It is a copy of a recent strip from the widely syndicated comic "BLOOM COUNTY." Permission to reproduce this copyrighted strip has been graciously granted by the Washington Post Writers Group, which syndicates this comic strip.

Judge Hogan, AUSA Kent, the sharp-eyed young lady in the Clerk's office and I have now done our bit. Restoring the younger Sproed's respect—if this will help somewhat in achieving that worthy aim—seems, somehow, a fitting way to close the year 1985. It is a small victory, perhaps, but well worth the effort.

Mr. Sproed's young son, as a part of the process of having his respect restored, is urged not to take too literally the accompanying panel strip of "Bloom County."

For the foregoing reasons, I approve, affirm and adopt the Magistrate's order of dismissal.

IT IS SO ORDERED.

### APPENDIX "A"

Your Honor:

Since it is neither reasonable nor practical to appear in court, I am writing this letter of explanation. I don't like to use the courts time on such matters but $50 represents a lot of time and hard work to

---

**4.** Judge Hogan had no need, in view of the government's motion, to look more closely at the citation. The Park Ranger may have been on shaky legal as well as entomological grounds. The description of the violation alleged was "Preservation of Natural, Cultural & Archeological Resources." The Ranger filled in, as the regulation he felt had been trampled upon, 36 C.F.R. 2.1(a)(1). That section provides as follows:

2.1 Preservation of Natural, Cultural and Archeological Resources:

(a) Except as otherwise provided in this chapter, the following is prohibited:

(1) Possessing, destroying, injuring, removing, digging, or disturbing its natural state:

(i) Living or dead wildlife or fish, or the parts of products thereof, such as antlers or nests.

(ii) Plants or the parts of products thereof.

(iii) Nonfossilized and fossilized paleontological specimens, cultural or archeological resources, or the parts thereof.

Wildlife is defined by 36 C.F.R. § 1.5 to mean:

"any member of the animal kingdom and includes a part, product, egg of offspring thereof, or the dead body or part thereof, except fish."

Actually, one could read Mr. Sproed's second paragraph as the functional equivalent of a Rule 12 Motion to Dismiss on the ground that the citation fails to state a claim. Under well settled constitutional principles, a criminal charge, under the Fifth Amendment must be specific enough in its charging language to notify the accused of the nature of his alleged offense so he may prepare a defense, and plead double jeopardy in the event of conviction or acquittal. Under these circumstances, however, I doubt that the Park Ranger would want to pursue the charge. He would, presumably, take to heart Wordsworth's dictum in his poem "To A Butterfly", which may not be entirely inapplicable here:

Much converse do I find in thee,
Historian of my infancy!
Float near me; do not yet depart!
Dead times revive in thee:
Thou bring'st, gay creature as thou art!
a solemn image to my heart.

me and more important is this decision in my boys mind.

I plead not guilty to the charge of "Destruction of Natural Cultural & Archeological Resources." The park ranger spent about 30 minutes on his C.B. and looking through his book but never did find anything against collecting insects. So he just included it in the above class.

My boy and I have always loved and enjoyed the out-of-doors and never knowingly disregard laws. In this case we were out catching butterflies. We have a collection and wherever we go we try to add to it. It never entered my mind that it was unlawful to catch a butterfly in the park. We saw no signs and there was nothing even hinting at such a thing in the paper given to us when we entered the park (which I have enclosed). It does state that it is o.k. to catch fish.

It is this kind of incident that destroys young peoples respect for the law. I feel that a friendly explanation and a warning was all that was necessary—it would have made this a learning experience instead of a bitter remembrance. We do not have the opportunity to travel a lot and I am afraid this "special occasion" may be remembered only by the outcome of this incident.

It will take some time for me to restore my boys previous respect for park rangers. I trust that your decision will make that job easier for me.

Very Sincerely
(s) David Sproed
(208)

APPENDIX B